

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT MISSISSIPPI
SOUTHERN DIVISION

JODY BABINEAUX )  Cause No. 2:24cv3-KS-MTP
 )
Plaintiff, )  **PLAINTIFF'S COMPLAINT**
 )  **FOR INJUNCTIVE RELIEF,**
vs. )  **DAMAGES, AND JURY TRIAL FOR**
 )  **VIOLATIONS OF THE UNIFORMED**
 )  **SERVICES EMPLOYMENT AND**
SOUTHEASTERN BAPTIST )  **REEMPLOYMENT RIGHTS ACT**
COLLEGE, and ROBERT LOPEZ, )  **("USERRA")**
 )
Defendants. )  **EXEMPT FROM FILING FEES**
 )  **UNDER 38 U.S.C. § 4323(h)(1)**
 )
 )
 )
 )
_)

## I.     **INTRODUCTION**

1.     This civil action is brought pursuant to the Uniformed Services

Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4335

(USERRA), as well as Mississippi common law.

2.     This cause of action is exempt from filing fees under 38 U.S.C. §

4323(h)(1).

3.     Plaintiff, Jody and Babineaux (hereinafter "Plaintiff" or

"Babineaux"), by and through the undersigned attorneys, aver as stated herein.

1

## II.    PARTIES

3.    Plaintiff, ("Mr. Babineaux") is a public schoolteacher.

4.    Mr. Babineaux is a former active-duty Marine.

5.    Mr. Babineaux is now an Officer in the Army Reserves.

6.    At all times pertinent hereto, Mr. Babineaux was a member of the Mississippi National Guard.

7.    At all times pertinent hereto, Mr. Babineaux was a disabled person with a service-connected disability.

8.    At all times pertinent hereto, Mr. Babineaux was an employee of SBC.

9.    At all times pertinent hereto, Plaintiff resided in Laurel, Mississippi.

10.    Defendant, Southeastern Baptist College (hereinafter "SBC" or "Defendant") was Plaintiff's "employer" as that term is defined by the governing statutes.

11.    Defendant, Robert Lopez was Plaintiffs' "employer" as that term is defined by the governing statutes.

12.    For the purposes of 38 U.S.C. § 4303(4), SBC is a private employer operating within the State of Mississippi.

### III.    JURISDICTION AND VENUE

13.    The Federal Court for the Southern District of Mississippi has personal jurisdiction over the parties because the parties are located in this District and have substantial contacts with this District.

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims in this complaint arise out of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et seq.*, which confers subject matter jurisdiction on this Court pursuant to 38 U.S.C. § 4323(b)(3). This Court also has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in the Federal Court for the Southern District of Mississippi, under 38 U.S.C. § 4323(c) and 28 U.S.C. § 1391(b) because the acts and omissions in this complaint occurred in this District.

### IV.    FACTS

16.    Plaintiffs re-allege all previous allegations as though fully set forth herein.

17.    Plaintiff, ("Mr. Babineaux") is a public schoolteacher.

18.    Mr. Babineaux is a former active-duty Marine.

3

19.    Mr. Babineaux is now an Army Reserve Officer.

20.    Mr. Babineaux is a disabled veteran with service-connected disabilities.

21.    Defendant is a small college in Mississippi.

22.    Defendant was Mr. Babineaux's "employer," as that term is defined under the Uniformed Services Employment and Reemployment Rights Act.

23.    On September 20, 2020, Mr. Babineaux entered a 12-month employment contract with Defendant.

24.    Defendant hired Mr. Babineaux as a baseball coach.

25.    Mr. Babineaux's contracted salary for the 2020 – 2021 season was $22,500.00.

26.    Mr. Babineaux performed the duties of his position exemplarily.

27.    During the 2020 – 2021 season, Mr. Babineaux invested $2,000.00 of his salary back into the baseball program.

28.    During the 2020 – 2021 season, Mr. Babineaux also wrote a $3,895.00 personal check to rent a charter bus for the team to travel to the regional tournament.

29.    Defendant also promised to reimburse the $2,000.00 in the following year's contract for the 2021 – 2022 season.

30.    This would have increased Mr. Babineaux's 2021 – 2022 contract from $22,500.00 to $24,500.00.

31.    Defendant promised to pay Mr. Babineaux $24,500.00, for the 2021 – 2022 season.

32.    Plaintiff was heavily invested and involved in the SBC baseball program.

33.    Plaintiff was employed by the SBC baseball program.

34.    On <u>December 8, 2020</u>, Mr. Babineaux was ordered to appear for active-duty deployment on <u>May 24, 2021</u>.

35.    Mr. Babineaux's active-duty service was scheduled to last 400 days.

36.    Mr. Babineaux promptly notified Defendant of his military orders.

37.    Mr. Babineaux promptly informed Defendant that he intended to return to work following his military deployment.

38.    On <u>May 10, 2021</u>, former Athletic Director Buddy Duke announced that he would no longer serve as the Athletic Director at Southeastern Baptist College, starting the end of May.

39.    On May 12, 2021, Plaintiffs met with the President of the College, Dr. Carson.

40.    During the meeting, Dr. Carson stated that a new Athletic Director was hired, Robert E. Lopez.

41.    During the meeting, Dr. Carson acknowledged Mr. Babineaux's upcoming deployment, and assured Plaintiffs that Mr. Babineaux could continue limited duties for the college, and that he would be put back to full-time work when he was released from active duty.

42.    During the meeting, Dr. Carson assured Plaintiffs that Defendant intended to continue paying Mr. Babineaux his regular salary while he was deployed.

43.    Subsequent emails from Defendant confirmed this promise. See *Infra*.

44.    During the meeting, Dr. Carson promised to mail Mr. Babineaux a new contract for the 2021 – 2022 season, in September of 2021.

45.    Mr. Babineaux worked for Defendant until his deployment in May of 2021.

46.    Prior to his departure, Mr. Babineaux obtained letters of intent from 12 recruits.

47.    On <u>May 21, 2021</u>, Mr. Babineaux gave a speech to the parents and family members of 12 student athletes he recruited for the 2021 – 2022 season.

48.    On <u>May 24, 2021</u>, Mr. Babineaux reported for active duty.

49.    During May and June, Mr. Babineaux's unit was preparing for deployment to Germany, in support of Operation Enduring Freedom.

50.    Thereafter, on <u>June 14, 2021</u>, while deployed on active duty, Mr. Babineaux communicated with a parent regarding her son's recruitment for the upcoming season.

51.    Mr. Babineaux continued his work for SBC because of the promises made by the President of SBC.

52.    Mr. Babineaux continued performing other duties for Defendant, including developing and negotiating the upcoming seasons' schedules, and negotiating the contracts for games with Nicholls State University, William Carey, Dillard University, Loyola, and a few other games.

53.    Mr. Babineaux provided other consideration, including allowing Defendant to hold Mr. Babineaux out as head coach and using Mr. Babineaux's successes with the team and his reputation to recruit new student athletes for the 2021 – 2022, and 2022 – 2023 seasons.

54.     Defendant received the benefit of Mr. Babineaux's reputation, from holding Mr. Babineaux out as the head coach for recruiting purposes, and from building a team around Mr. Babineaux's reputation and successes.

55.     On June 14, 2021, while Mr. Babineaux was on active duty, Athletic Director Lopez emailed Mr. Babineaux regarding new recruiting protocols for the 2021 – 2022 season.

56.     Despite Mr. Babineaux's devotion to his position as head coach, Dr. Carson never mailed Mr. Babineaux the new contract for the 2021 – 2022 season.

57.     However, the new Athletic Director, Robert Lopez spoke with Mr. Babineaux via telephone and informed Mr. Babineaux that Defendant intended to pay Plaintiff $24,500.00, for the 2021 – 2022 season.

58.     Defendant agreed to pay Mr. Babineaux while he was deployed because Defendant was building a baseball program around Mr. Babineaux's reputation and successes.

59.     The new Athletic Director, Robert Lopez also informed Mr. Babineaux that Defendant intended to pay Mr. Babineaux $24,500.00, for the 2022 – 2023 season.

60.     During that same telephone call, the new Athletic Director, Robert Lopez informed Mr. Babineaux that Assistant Coach Farrell would be paid an additional $3,000.00, and Assistant Coach Ford would be paid an additional

8

$2,500.00, for the 2022 – 2023 season, for performing additional work while Mr. Babineaux was deployed.

61.    Then, on <u>June 21, 2021</u>, the new Athletic Director, Robert Lopez sent Mr. Babineaux a text message demanding that Mr. Babineaux agree to reduce his 2021 – 2022 salary to $18,000.00, because of Mr. Babineaux's military service.

62.    The Athletic Director stated that Mr. Babineaux needed to agree to the reduced salary because the assistant coaches were working more as a result of Mr. Babineaux's military service.

63.    The Athletic Director stated that the salary reduction was non-negotiable.

64.    The Athletic Director stated that if Mr. Babineaux failed to agree to reduce his salary within a reasonable amount of time, Defendant intended to terminate Mr. Babineaux's employment, and revoke future employment.

65.    The salary reduction was allegedly designed to enable Defendant to pay the Assistant Coaches additional money for performing additional duties while Mr. Babineaux was away on military duty.

66.    Mr. Babineaux had no choice but to agree to the 2021 – 2022 salary reduction.

9

67.     However, Defendant agreed to the condition that when he returned to work, Defendant would increase Mr. Babineaux's salary back to the previously agreed upon rate of $24,500.00, for the 2022 – 2023 season.

68.     Defendant also agreed to follow through with the promise to pay Mr. Babineaux $18,000.00, for the 2021 – 2022 season.

69.     On <u>June 21, 2021</u>, Athletic Director Lopez emailed Mr. Babineaux, confirming the parties' agreement:

> Per my text message, **your 2021-2022 contract** will be in the sum of $18,000.00. Your contract is being adjusted in order to pay two assistant baseball coaches $6,000.00 each. Since they will be asked to work more hours they will be paid accordingly.[1]

70.     The <u>June 21, 2021,</u> email and text message confirms that Defendant agreed to pay Mr. Babineaux $18,000.00, for the 2021 – 2022 season.

71.     The <u>June 21, 2021,</u> email and text message confirm that Defendant took adverse employment action against Mr. Babineaux by decreasing his salary because of his military service.

72.     The <u>June 21, 2021</u>, email and text message confirm that Mr. Babineaux's military service was a motivating factor for Defendant taking the adverse employment action of decreasing Mr. Babineaux's salary.

---

[1] (Emphasis added).

73.     On <u>June 21, 2021</u>, Mr. Babineaux sought USERRA guidance from the United States Department of Labor regarding Defendant's contacts with Mr. Babineaux while he was on active duty, and the salary reduction that appeared to be directly related to Mr. Babineaux's military service.

74.     The Department of the Army provided Mr. Babineaux with a memorandum describing Mr. Babineaux's USERRA rights.

75.     Thereafter, Defendant became aware of Mr. Babineaux's USERRA complaint and his USERRA rights.

76.     Defendant retaliated against Mr. Babineaux and his wife in response to Mr. Babineaux exercising his USERRA rights.

77.     Despite the parties' agreement, and despite Mr. Babineaux's performance under the agreement, Defendant failed to pay Mr. Babineaux the agreed upon $18,000.00, for the 2021 – 2022 season.

78.     Defendant failed to pay Mr. Babineaux in retaliation for Mr. Babineaux exercising his USERRA rights.

79.    Additionally, Plaintiffs manage rental properties in Laurel, Mississippi.

80.    On July 21, 2021, Dean Anderle Foster, an administrator at the college, notified students attending school that they are not allowed to lease homes from Mr. Babineaux or his wife while attending Southeastern Baptist College.

81.    The July 21, 2021, email stated in part: "…I have told him and I'm telling y'all – you cannot rent properties from Coach Babbeneaux [sic] nor his wife nor any connection to him…"

82.    Dean Anderle Foster's email then steered the student's parent to a competitor: "A guy I know knows a guy who he thinks has one off university. He is checking in [sic] it."

83.    The July 21, 2021, email was sent in retaliation for Plaintiffs exercising USERRA rights.

84.    Thereafter, Defendant deleted Mr. Babineaux's SBC email account.

85.    Defendant erased communications that led to the USERRA complaint.

86.    Defendant erased communications confirming that Defendant agreed to pay Mr. Babineaux $18,000.00, for the 2021 – 2022 season.

87.    On <u>March 3, 2022</u>, Mr. Babineaux was released from federal active-duty orders.

88.    On <u>March 3, 2022</u>, Mr. Babineaux was assigned to active-duty training with his local Reserve Unit.

89.    On <u>April 12, 2022</u>, Mr. Babineaux attended a baseball game at the college.

90.    On <u>April 12, 2022</u>, Mr. Babineaux was still on military orders.

91.    On <u>April 12, 2022</u>, at the baseball game, the Athletic Director confronted Mr. Babineaux in a hostile manner about Mr. Babineaux's USERRA complaint and the resulting investigation.

92.    During the <u>April 12, 2022</u>, confrontation, the Athletic Director repeatedly called Mr. Babineaux "son."

93.    During the <u>April 12, 2022</u>, confrontation, the Athletic Director yelled at Mr. Babineaux in front of players and their parents.

94.    During the <u>April 12, 2022</u>, confrontation, the Athletic Director followed Mr. Babineaux all the way to his car, threatening and harassing him the entire way.

95.     During the April 12, 2022, confrontation, the Athletic Director repeatedly informed Mr. Babineaux that he no longer worked for SBC, and that he would do everything he could to ensure that SBC did not reemploy Mr. Babineaux as promised.

96.     During the April 12, 2022, confrontation, the Athletic Director repeatedly informed Mr. Babineaux that if Defendant did reemploy Mr. Babineaux, he would change the terms of the employment contract to make it more difficult for Mr. Babineaux to work for Defendant *and* serve in the military.

97.     During the April 12, 2022, confrontation, Mr. Babineaux repeatedly informed the Athletic Director that he did not want to discuss work matters while he was still on active duty.

98.     Defendant harassed and threatened Mr. Babineaux in retaliation for Mr. Babineaux exercising his USERRA rights.

99.     On April 19, 2022, the Athletic Director sent Mrs. Babineaux a text message asking for Mr. Babineaux's email.

100.    The Athletic Director needed to add Mr. Babineaux to the email chain for notices to coaches.

101.    On April 20, 2022, Mrs. Babineaux informed the Athletic Director that Defendant deactivated Mr. Babineaux's email account.

14

102.    On <u>April 20, 2022</u>, Hubert Dyess, Defendant's IT Director provided Mr. Babineaux with a new email account.

103.    On <u>April 20, 2022</u>, Mr. Babineaux emailed Hubert Dyess, Defendant's IT Director, and requested that he reactivate Mr. Babineaux's *original* email account, because it contained contacts for coaches, recruits, and contracts.

104.    On <u>April 20, 2022</u>, Hubert Dyess, Defendant's IT Director responded to Mr. Babineaux's email with: **"sorry but no."** (Emphasis added).

105.    Defendant refused to restore Mr. Babineaux's original email account in retaliation for Mr. Babineaux exercising his USERRA rights.

106.    Defendant's refusal to restore Mr. Babineaux's original email reflects the Athletic Director's threat to retaliate against Mr. Babineaux by making it more difficult for Mr. Babineaux to work for Defendant while in the military.

107.    On <u>April 20, 2022</u>, while Mr. Babineaux was still on active duty, still under the parties' agreement for the 2021 – 2022 season, and performing limited duties for Defendant, the Athletic Director requested that Mr. Babineaux *reapply* for employment and provide a copy of his resume.

108.    On <u>April 22, 2022</u>, Mr. Babineaux emailed the Athletic Director a formal request for reemployment, along with a copy of his resume, his DD 214, and REFRAD orders.

109.    On <u>April 22, 2022</u>, Mr. Babineaux informed Defendant that he intended to return to work on <u>August 15, 2022</u>.

110.    In the interim, Mr. Babineaux had additional military duty to perform, and he was seeking treatment for a service-connected disability.

111.    On <u>April 22, 2022</u>, the Athletic Director responded to Mr. Babineaux's email, stating: **"In your absence, <u>since you are not employed with Southeastern Baptist College</u>, you will not act as a functionary for the men's baseball team at Southeastern Baptist College."** (Emphasis added).

112.    The statement that Mr. Babineaux was "…not employed with Southeastern Baptist College…" was untrue, and it conflicts with subsequent emails from the Athletic Director.  See *Infra*.

113.    Additionally, the Athletic Director previously agreed that Mr. Babineaux would be under contract and paid $18,000.00, for the 2021 – 2022 season, which runs through <u>September of 2022</u>.

114.    The President also assured Mr. Babineaux that he still worked for SBC, and that SBC would pay Mr. Babineaux for his services.

**115.**    The Athletic Director's email stating: **"In your absence, <u>since you are not employed with Southeastern Baptist College</u>…"** was sent in retaliation for Mr. Babineaux exercising his USERRA rights.

116.    The Athletic Director's email stating: "**In your absence, <u>since you are not employed with Southeastern Baptist College</u>…**" was sent to harass, intimidate, and cause Plaintiffs emotional distress.

117.    On <u>April 28, 2022</u>, Mr. Babineaux attended the college's final home baseball game with his wife.

118.    Upon entering the game, Mr. Babineaux attempted to pay the entrance fee.

119.    The gate attendant refused Mr. Babineaux's payment and stated: "Welcome back, coach!"

120.    Mr. Babineaux placed $5.00 in the donation jar.

121.    Later at the game, the Athletic Director approached Plaintiffs in a hostile manner.

122.    The Athletic Director demanded to know why Plaintiffs attended the game.

123.    The Athletic Director demanded to know how Plaintiffs gained entry into the game.

124.    The Athletic Director demanded to know if Plaintiffs paid admission.

125.  The Athletic Director stated that because Mr. Babineaux was considered "unemployed"[2] by the school, the gate attendant was not supposed to admit Plaintiffs for free.

126.  Mr. Babineaux explained that he tried to pay the entrance fee, but the gate agent rejected his payment.

127.  Mr. Babineaux explained that he then donated $5.00.

128.  The Athletic Director then confronted and chastised the gate agent who admitted Plaintiffs for free.

129.  The Athletic Director stated very loudly that Mr. Babineaux was no longer employed by SBC and is not to be admitted to games for free.

130.  Mr. Babineaux paid the gate agent the $20.00 entry fee.

131.  The Athletic Director instructed a Police Officer to remove Mr. Babineaux and his wife from the game anyway.

132.  Defendant took all these actions in front of parents, student athletes, and SBC volunteers and employees.

133.  Defendant took all these actions in retaliation for Plaintiffs exercising USERRA rights.

---

[2] This allegation conflicts with subsequent emails from the Athletic Director, wherein he described Mr. Babineaux as being on a "leave of absence."

134.   Defendant took all these actions to intentionally harass, intimidate, humiliate, and tarnish both Plaintiffs' character and reputations.

135.   Defendant's actions, having a Police Officer escort a disabled veteran and his wife out of a baseball game in retaliation for serving in the military and exercising USERRA rights, are outrageous and utterly unacceptable in a civilized society.

136.   Plaintiffs were in fact humiliated, intimidated, embarrassed, and suffered extreme emotional distress as a direct and proximate result of Defendant's intentional actions.

137.   On April 29, 2022, Plaintiffs filed a police report with the Laurel Police Department concerning the Athletic Director's threatening and harassing behavior at the game on April 28, 2022.

**138.**   On May 2, 2022, the Athletic Director sent Mr. Babineaux an email stating that during Plaintiff's "leave of absence,"[3] Mr. Babineaux was not allowed to act as a functionary for men's baseball team, **"This includes the following: recruiting, purchasing of equipment, scheduling, hiring of coaches, attending tryout sessions, and any other duties that would be considered the**

---

[3] Note that the Athletic Director previously stated that Plaintiff was: "...not employed with Southeastern Baptist College..."

**responsibility of a baseball coach at Southeastern Baptist College**." (Emphasis added).

139.   It is not possible to simultaneously be on a "leave of absence" *and* no longer employed by the same employer.

140.   Because the Athletic Director admitted that coach Babineaux was on a "leave of absence" and *not* unemployed by SBC, there was no factual, legal, or rational basis for the Athletic Director to have the police remove coach Babineaux and his wife from the game under the patently false premise that Mr. Babineaux was no longer employed by SBC.

141.   The Athletic Director's harassment, threats, and other adverse actions at the baseball game were intended to retaliate against Mr. Babineaux for exercising his USERRA rights.

142.   On <u>May 2, 2022</u>, when the Athletic Director sent Mr. Babineaux the email, Mr. Babineaux was still on active duty.

143.   Defendant sent the email in retaliation for Mr. Babineaux exercising his USERRA rights, and for filing a Police Report to stop Defendant's harassment and threats.

144.   On <u>May 3, 2022</u>, Mrs. Babineaux emailed a formal letter of complaint to Dr. Scott Carson about the Athletic Director's behavior at the baseball game.

145.    On <u>May 4, 2022</u>, Mr. Babineaux sent two formal complaint letters to Dr. Carson about the Athletic Director's behavior.

146.    The complaints requested an investigation into the Athletic Director's threatening and harassing behavior.

147.    On <u>May 14, 2022</u>, Mr. Babineaux's active-duty orders ended.

148.    The character of Mr. Babineaux's military service was "honorable."

149.    Mr. Babineaux's service was less than five years, but more than 180 days.

150.    Mr. Babineaux timely provided Defendant with notice of his intent to return to work, and timely requested reemployment.

151.    Pursuant to statute, Mr. Babineaux was allowed 90 days to return to work.

152.    Mr. Babineaux has a service-connected disability.

153.    Defendant was aware that Mr. Babineaux was seeking therapy and organizing his personal affairs prior to returning to full-time employment.

154.    Defendant was frustrated with Mr. Babineaux for attending games and engaging in partial duties while no longer deployed.

155.    Defendant retaliated against Plaintiffs because Mr. Babineaux took the statutorily allowed 90 days off work to seek treatment for his service-connected disabilities following his year-long deployment.

156.    On May 16, 2022, Mrs. Babineaux attended a meeting with the President and the Dean of Academics (Jane Walker) about the Athletic Director's threatening behavior.

157.    Richard Patton attended this meeting, as a witness and mediator.

158.    On May 17, 2022, the Athletic Director, Defendant, Robert Lopez resigned from the position of Athletic Director at college.

159.    On May 19, 2022, Mr. Babineaux had a meeting with the President and the Dean of Academics about the Athletic Director's threatening behavior.

160.    Richard Patton attended the meeting on May 19, 2022, as witness and mediator.

161.    During the meeting on May 19, 2022, the President informed Mr. Babineaux that the Athletic Director resigned.

162.    The President stated that he did not terminate the Athletic Director, he simply instructed the Athletic Director to apologize to Plaintiffs.

163.    The President stated that he doubted that the Athletic Director would actually apologize to Mr. Babineaux or his wife.

164.    Defendant, Robert Lopez did not apologize to Mr. Babineaux or his wife.

165.    Defendant, Robert Lopez is no longer employed by SBC.

166.  Upon information and belief, the Athletic Director, Robert Lopez resigned, at least in part, because of the issues related to his threatening behavior, harassment, and retaliation against Plaintiffs for exercising USERRA rights.

167.  During the meeting on May 19, 2022, the President stated that he wanted Mr. Babineaux to return as head coach of baseball for the 2022 – 2023 season.

168.  Mr. Babineaux accepted reemployment and informed the President that he intended to return on August 15, 2022.

169.  Mr. Babineaux informed the President that he was dealing with family issues,[4] and medical issues related to his service-connected disabilities.

170.  During this meeting, the President agreed that Mr. Babineaux was supposed to be paid for $18,000.00, for the 2021 – 2022 season.

171.  The President alleged that the previous Athletic Director, Robert Lopez failed to pay Mr. Babineaux, but that the President had no knowledge that Defendant failed to pay Mr. Babineaux the $18,000.00 he was owed.

172.  On June 23, 2022, the new Athletic Director, Robert Walters sent Plaintiff a text message requesting a meeting to discuss Mr. Babineaux's new contract for the 2022 – 2023 season.

---

[4] Plaintiff's mother was laid to rest in May of 2022.

24

173.    During the meeting, the new Athletic Director suggested lowering Mr.

Babineaux's pay because he served in the military and the Assistant Coaches

perform additional duties in his absence.

174.    On June 28, 2022, Mr. Babineaux sent a follow up email to Robert

Walters in response to the suggestion that Mr. Babineaux should agree to reduce

his salary.

175.    Mr. Babineaux's email of June 28, 2022, stated:

> Good Afternoon Mr. Walters, From my understanding of
> that meeting last week, you stated that I had $30,000 for
> baseball staff salary and said that I would be    paid
> $20,000. Coach Farrell would be paid $10,000 and  Coach
> Ford would not return for the 2022-23 season. Before I left
> for my military deployment in 2021 my salary as the head
> baseball  coach  was  $22,500  and  my  I  had  the
> responsibility of hiring and firing and setting the salary of
> the  assistant  coaches  and  staff  within  the  baseball
> program. Prior to my deployment, the baseball program
> had 1 head coach, 2 assistant coaches and 1  team manager
> at $28,000 total salary which was $2000 dollars  under
> budget  because  I  elected  to  suspend  the
> $2000 from my salary for year one to put it back into the
> program. I would like to know if it is the intent  to contract
> me  for  $20,000  for  2022-23  season?  Have  I  lost  the
> seniority to hire or set my assistant coaches salaries within
> the baseball program?

176.    On June 29, 2022, Robert Walters emailed Mr. Babineaux stating:

"No that's not what we agreed on and I do not discuss contracts by email."

177.    On July 5, 2022, Mr. Babineaux sent a response email to Robert

Walters, stating:

I am reaching out in regards to your email. I understand your decision not to discuss contracts by email. I apologize for the miscommunication, however I was under the impression it was the meeting that Dr. Carson wanted me to attend to discuss my salary and assistant coaches' salaries. I am currently out of town and will be in and out throughout July and August. I want to make sure that all information is in agreement before my return to duty.

178. On <u>July 5, 2022</u>, Robert Walters responded via email: "Feel free to come by anytime."

179. On <u>July 6, 2022</u>, Robert Walters sent a text message to all coaches requesting a coaching meeting <u>July 12, 2022</u>.

180. Mr. Babineaux received the text message because he was SBC's baseball coach.

181. On <u>July 7, 2022</u>, Mr. Babineaux emailed Robert Walters, stating:

Mr. Walter, I am writing you to acknowledge your text message I received of a coach's meeting scheduled on July 12 at 6:30 p.m. and to inform you that I will not be able to attend due to my military annual training scheduled for July 11-24. My official scheduled return to workday is August 13 or 15 (weekend day). During the July- Mid August months, I will be taking care of business concerning military, personal, and family affairs in preparations of returning to work. If you have any questions, please feel free to contact me. Thanks for your support.

182. On <u>July 8, 2022</u>, Robert Walters emailed Mr. Babineaux, stating:

Ok. Coach Farrell will be available during your military service and your personal family time. I will submit all

changes to him. If you have any recruits unknown to us,
we will need to know about them for registration and a pre-
school "meet the Charger night." We look forward to
seeing you when your contract day begins.

183.    The reference to "any recruits unknown to us" illustrates that Mr.

Babineaux was working for Defendant and recruiting student athletes during the

2021 – 2022 season.

184.    From July 11, 2022, through July 24, 2022, Mr. Babineaux attended

annual military training.

185.    On August 15, 2022, Mr. Babineaux sent an email to Coach Walters,

stating:

Good Morning Mr. Walters, Today is my official contract
employee return date back to Southeastern Baptist College
as Head Baseball Coach. Would you like to meet or have
a conference before I start or initiate anything within the
program? If so, please let me know so that I may schedule
a time. I believe this would be the best course of action to
prevent any confusion along the way.

186.    On August 15, 2022, Mr. Babineaux reported to Robert Walters at

Southeastern Baptist College at 4pm to sign the 2022 – 2023 Coaching Contract.

187.    Robert Walters presented Mr. Babineaux with a contract for the 2022

– 2023 season.

188.    The 2020 – 2021 contract was 2 pages.

189.   The 2021 – 2022 contract was a continuation of the 2020 – 2021 agreement, which was simply verified by text messages and emails.

190.   The 2022 – 2023 contract that Robert Walters presented was 11 pages.

191.   The new 11-page contract appeared to incorporate the previous Athletic Director's threats that Defendant intended to make it more difficult for Mr. Babineaux to perform the duties of his position *and* perform military service.

192.   The new 11-page contract did not include any mention of the $18,000.00 that Defendant promised to pay Mr. Babineaux for the previous 2021 – 2022 season.

193.   The new 11-page contract did not include any mention of the $2,000.00 that Defendant promised to reimburse Mr. Babineaux for the 2020 – 2021 season.

194.   The new 11-page contract terms limited Mr. Babineaux's authority to serve as a head coach.

195.   Because of the above issues, Mr. Babineaux requested additional time to review the new contract because it differed so significantly from the previous contracts.

196.   On August 19, 2022, Mr. Babineaux sent an email to Mr. Walters, stating:

> I am writing you to let you know that I am still reviewing the 2022-23 Southeastern Baptist Head Baseball Coach Contract. I am requesting additional time to review and evaluate this contract because it is different from the previous contract I had signed before I left for my deployment. If possible I would like to set up a meeting so that we can discuss some of the sections of the contract. I believe [it] would help tremendously in providing clarity before I start setting up training and guidelines for the program.

197. On <u>August 23, 2022</u>, Mr. Babineaux sent an email to the President Carson, stating:

> I am requesting a meeting with you when possible. The purpose for this meeting is to discuss the content and changes in my 2022-23 Baseball Coaching Contract. This matter I feel is very important for me to move forward with the program. I am available any time after 4 p.m. throughout the weekday. I wish to discuss the matter in a cordial and professional manner.

198. On <u>August 23, 2022</u>, President Carson sent an email to Mr. Babineaux, stating:

> Good Afternoon Jody, I pray all is well with you. I have an opening to meet with you this Thursday, Aug 25 at 4 p.m. here in our conference room. Since Coach Walters is charged with the management of all athletic contracts, and with the authority for all hiring actions within his department, he will also be in attendance at this meeting.

199. On <u>August 23, 2022</u>, President Carson sent an email to Mr. Babineaux, stating:

> Good afternoon, I hope all is well with you. I will be present for the meeting this Thursday, Aug 25 at 4pm.

> Also, I welcome the attendance of the Athletic Director
> Coach Walters since he is the manager of all hiring actions
> within athletic department.

200.    On <u>August 25, 2022</u>, Mr. Babineaux attended the meeting with President Carson, the Athletic Director, and the Dean of Academics, to discuss the changes in the terms of the new 11-page contract for employment.

201.    The President began the meeting by informing Mr. Babineaux that he was no longer employed at the college due to "abandonment."

202.    No contract negotiations occurred during the meeting.

203.    Defendant simply provided Mr. Babineaux with a letter terminating Mr. Babineaux's employment and alleging that Mr. Babineaux "abandoned" his employment.

204.    The President read the letter aloud to Mr. Babineaux.

205.    Mr. Babineaux then provided the President and the Athletic Director with a copy of the Department of Labor handout detailing Mr. Babineaux's USERRA rights.

206.    Defendant did not rescind the termination.

207.    Defendant planned to terminate Mr. Babineaux at the meeting because Defendant had the termination letter already drafted.

208.    The termination letter that Defendant provided Mr. Babineaux on <u>August 25, 2022</u>, stated:

> Your spouse is permitted to continue to attend classes without charge until the end of the current Fall Semester of 2022. This arrangement terminates on December 9, 2022. Thereafter, should she choose to continue as a student at SBC, all future financial obligations to the college, including tuition and fees, will be applied to her account.

209. Mr. Babineaux never "abandoned" his employment.

210. Mr. Babineaux accepted reemployment and scheduled a meeting to discuss the terms of the employment agreement.

211. In fact, as late as June 30, 2022, Defendant was still sending Coach Babineaux emails regarding equipment drop off and storage procedures for the 2022 – 2023 season.

212. Mr. Babineaux also had a meeting with the President of the University on May 19, 2022, where the parties agreed that Mr. Babineaux would be Defendant's head baseball coach for the 2022 – 2023 season.

213. The Athletic Director also sent emails to Mr. Babineaux in July of 2022, concerning coaches' meetings and logistical issues for the upcoming season. See *Supra*.

214. Defendant has never rescinded the email to students instructing student athletes that they are not allowed to rent properties from Plaintiffs.

215. Defendant was aware of Mr. Babineaux's USERRA rights when Defendant took the adverse employment actions described above.

31

216.   Defendant was aware of Mr. Babineaux's service-connected disability when Defendant took the adverse employment actions described above.

217.   Defendant willfully violated Mr. Babineaux's USERRA rights.

218.   Defendant's USERRA violations and willful USERRA violations caused Mr. Babineaux and his wife economic injuries and damages.

219.   Defendant's USERRA violations and willful USERRA violations are the direct and proximate cause of Plaintiffs' economic injuries and damages.

220.   Mr. Babineaux lost employment opportunities, pay, and other benefits, as a direct and proximate result of Defendant's USERRA violations and willful USERRA violations.

221.   Mr. Babineaux's military service was a motivating factor in Defendant's adverse employment actions.

222.   Mr. Babineaux's service-connected disability was also a motivating factor in Defendant's adverse employment actions.

223.    Defendant made no efforts to accommodate Mr. Babineaux's disability.

224.    Defendants did not offer Mr. Babineaux assistance, retraining, or accommodation of any kind.

225.    Defendants did not consider placing Mr. Babineaux in an alternative position.

226.    Upon information and belief, during this same period, Defendant did accommodate other, similar, non-servicemember injuries.

227.    There were similar positions available that Defendant could have assigned to Mr. Babineaux, including placing him in the position of assistant coach, or promoting him to Athletic Director when the previous Athletic Director resigned.

228.    At all times relevant hereto, Defendant maintained a posted notice where employers customarily place notices for employees as required by 38 U.S.C. § 4334, informing managers and employees of their rights under USERRA.

229.    At all times relevant hereto, Defendant had a duty to conduct itself in compliance with the law of USERRA, and ensure that Defendant's managers and agents followed the statutes.

230.    At all times relevant hereto, Defendant maintained policies that prohibit unlawful retaliation and discrimination.

231.   Defendant's above-referenced adverse employment actions breached those statutory duties.

232.   As a result of Defendant's unlawful conduct in violation of USERRA, and the necessity of this action to seek a remedy, Mr. Babineaux fears further retaliation against his employment rights by Defendants or its managers, directors or employees.

233.   Mr. Babineaux and his wife have both sought counseling as a direct and proximate result of Defendant's statutory violations, retaliation, threats, and harassment.

234.   Plaintiffs have both suffered extreme emotional distress as a direct and proximate result of Defendant's statutory violations, retaliation, threats, and harassment.

235.   As such, the employment relationship that Mr. Babineaux may have enjoyed with Defendant prior to the filing of this action is irreparably damaged through no fault of Mr. Babineaux.

236.   To the extent that Defendant alleges application of any agreement that constitutes any limitation on Mr. Babineaux's rights under USERRA, it is illegal, null and void, inapplicable, and of no force or effect, pursuant to 38 U.S.C. § 4302.

237.    Upon information and belief, Defendant is a party to contracts with the United States Government which prohibit Defendant from discrimination against veterans and military service members, which further illustrates Defendant's knowing and reckless disregard for the protections afforded a service member under USERRA.

238.    Upon information and belief, Defendant is a party to contracts with the United States Government which prohibit Defendants from discrimination or retaliation against persons with disabilities, which further illustrates Defendant's knowing and reckless disregard for the protections afforded a service member under ADAAA.

239.    Defendant employs highly trained legal professionals, with experience and immediate access to the provisions of USERRA, with the support of a sophisticated Human Resources Department, including immediate access to professional human resources personnel, and specially trained employment counsel.

240.    The proffered reason for the adverse employment action and other intentional infliction of emotional distress against Mr. Babineaux is a pretext for discrimination.

## V.    CAUSES OF ACTION

241.  Plaintiffs re-allege all previous allegations as though fully set forth herein.

242.  Defendant violated Plaintiffs' rights as guaranteed by USERRA, including, but not limited to: 38 U.S.C. § 4311 discrimination and retaliation in employment; 38 U.S.C. §§ 4312, § 4313 reemployment rights; and 38 U.S.C. § 4316, and 20 C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces.

243.  Defendant's USERRA violations were willful, entitling Plaintiffs to liquidated damages.  38 U.S.C. § 4323.

## CAUSE OF ACTION NO. 1
### USERRA – DISCRIMINATION & RETALIATION
### (38 U.S.C. § 4311(a))

244.  Plaintiffs re-allege all previous allegations as though fully set forth herein.

245.  Defendant unlawfully discriminated against Plaintiffs by, among other things:

a. Denying Mr. Babineaux employment and benefits of employment on the basis of his membership, service, or obligation to perform service in the uniformed service, including but not limited to, accommodating injuries sustained in the line of military duty, a right provided by USERRA.

b. Retaliating against and harassing Plaintiffs for filing a USERRA complaint and otherwise exercising USERRA rights.

c. Retaliating against and harassing Plaintiffs for Mr. Babineaux serving in the military and taking statutorily allowed time off to rehabilitate his injuries prior to reporting back to work.

d. Retaliating against and harassing Mr. Babineaux by eliminating his email account.

e. Retaliating against and harassing Mr. Babineaux by depriving him of the tools necessary to perform the essential functions of his job.

f. Retaliating against and harassing Mr. Babineaux by informing Mr. Babineaux that he was not allowed to perform the essential functions of his job, including recruiting, attending tryouts, or taking any other action required by his job description while Mr. Babineaux was on active duty.

g. Retaliating against and harassing Plaintiffs by instructing students not to rent houses from Plaintiffs.

h. Retaliating against and harassing Plaintiffs by threatening Plaintiffs at baseball games.

i. Retaliating against and harassing Plaintiffs by having Plaintiffs removed from a baseball game.

j. Retaliating against and harassing Mr. Babineaux by changing the terms of the employment agreement to make it more difficult for Mr. Babineaux to perform his job *and* serve in the military.

k. Retaliating against and harassing Mr. Babineaux by demanding that Mr. Babineaux voluntarily reduce his salary because he served in the military.

l. Retaliating against and harassing Mr. Babineaux by terminating Mr. Babineaux when he requested that the parties engage in discussions regarding Mr. Babineaux's employment contract.

## CAUSE OF ACTION NO. 2
### USERRA FAILURE TO PROMLY REEMPLOY & ACCOMMODATE
### (38 U.S.C. §§ 4312 & 4313)

246. Plaintiffs re-allege all previous allegations as though fully set forth herein.

247. Defendant's actions violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to promptly reemploy and retrain Mr. Babineaux in a position of seniority with other rights and benefits determined by seniority plus the additional seniority, and rights, and benefits, or other position that Mr. Babineaux would have attained had he remained continuously employed.

248. Defendant's actions further violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to make reasonable efforts to qualify or enable Mr. Babineaux to perform the essential tasks for reemployment.

249. Defendant's actions further violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to make reasonable efforts to accommodate Mr. Babineaux's temporary disability to perform the essential tasks for reemployment.

250. Defendant's actions further violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to identify an alternate position for Mr. Babineaux.

251. Defendant's actions further violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to disclose an alternate position for Mr. Babineaux.

252. Defendant's actions further violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to promptly reemploy and retrain Mr. Babineaux in an alternate position of seniority with other rights and benefits determined by seniority plus the additional seniority, and rights, and benefits, or other position that Mr. Babineaux would have attained had he remained continuously employed.

## CAUSE OF ACTION NO. 3

### USERRA – DENIAL OF RIGHTS OF EMPLOYMENT
### (38 U.S.C. § 4316)

253. Plaintiffs re-allege all previous allegations as though fully set forth herein.

254. The USERRA, § 4316(c), provides, in part:

> (c) A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause—
>
> (1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days;

255.   Mr. Babineaux's military service exceeded 180 days, and he was thereby protected from discharge without cause for one year.

256.   Defendants failed to properly reemploy Mr. Babineaux upon his return from military service, thereby terminating his employment within one year in contravention of USERRA.

257.   Upon information and belief, Defendant failed to afford Mr. Babineaux the rights and benefits to which Mr. Babineaux was entitled under § 4316 by, *inter alia,* failing to properly restore Mr. Babineaux to full employment status with full benefits, and denying Mr. Babineaux the rights and benefits determined by seniority and such other rights and benefits not determined by seniority that Mr. Babineaux would have attained if he had remained continuously employed.

## WILLFUL VIOLATIONS
(38 U.S.C. § 4323)

258.   Plaintiffs re-allege all previous allegations as though fully set forth herein.

259.   Mr. Babineaux is entitled to liquidated damages under USERRA because Defendant's conduct was willful as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c), where Defendant knew, or showed reckless disregard for whether its conduct was prohibited under USERRA.

41

## V.    <u>**PRAYER FOR RELIEF**</u>

260.   Plaintiff respectfully demands a jury trial and further to be awarded compensation for all injury and damage suffered.  To wit:

a.    both economic and non-economic damages in the amount

to be proven at trial including back pay, front pay, lost benefits of

employment, emotional distress, and negative tax consequences of

any award;

b.    liquidated damages, exemplary damages, and punitive

damages, as provided by law;

c.    general damages and punitive damages for the emotional

distress Defendant directly and proximately caused Plaintiff and his

wife; and

d.    reasonable attorney and expert fees, and costs, pursuant

to 38 U.S.C. § 4323, and as otherwise provided by law.

261.   Under USERRA, a court may order equitable remedies,

including reinstatement and recoupment of any loss of wages or benefits.

§ 4323(d)(1)(A, B).

262.   USERRA also empowers a court to use "its full equity powers,

including temporary or permanent injunctions, temporary restraining orders,

and contempt orders, to vindicate fully the rights or benefits" of the service

member.  § 4323(e).

263.   A court may award the prevailing party reasonable attorneys'

fees, expert witness fees, and other litigation expenses.  § 4323(h)(2).

44

264. Based on the violations discussed previously, Plaintiff asks the Court for the following equitable relief:

a. Declare that Defendant's failure to reemploy Plaintiff, in part because of his military service, was unlawful and violated USERRA, 38 U.S.C. § 4311(a);

b. Declare that Defendant's failure to reemploy Plaintiff was unlawful and violated USERRA 38 U.S.C. §§ 4312; 4313;

c. Declare that Defendant's failure to provide Plaintiff with the rights and benefits Plaintiff would have attained if he had remained continuously employed was unlawful and violated USERRA 38 U.S.C. § 4316.

d. Declare that Defendant's violations of USERRA were willful pursuant to 38 U.S.C. § 4323(d)(1)(C);

e. Reinstate Plaintiff to the position of employment with Defendant—the position to which he would have been reemployed had Defendant not violated USERRA;

f. Order Defendant to pay Plaintiff lost wages incurred and the value of benefits lost, between Plaintiff's termination and the present;

g. Order Defendant to pay prejudgment and post judgment interest on the amount of wages and lost benefits found due;

45

h. Order Defendant to pay liquidated damages in the amount of

lost wages and value of benefits calculated pursuant to

38 U.S.C. § 4323(d)(1)(C); and

I. Order such other relief as may be just and proper.

## VI.  <u>JURY DEMAND</u>

Plaintiff hereby respectfully demands a jury trial.

## VII.  <u>SPOLIATION</u>

Plaintiff hereby demands that Defendant and Defendant's representatives

preserve all material evidence in any way relating to the causes of action stated

*supra.*

Respectfully submitted this the 9 day of January, 2024

      JODY BABINEAUX and
      Plaintiff

      By:_____
      Daniel M. Waide, (MSB#103543)

      Daniel M. Waide, (MSB#103543)
      Johnson, Ratliff & Waide, PLLC
      1300 HARDY ST.
      PO BOX 17738
      HATTIESBURG, MS 39404
      601-582-4553 (OFFICE)
      601-582-4556 (FAX)
      dwaide@jhrlaw.net

      Attorneys for Plaintiffs

46