## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

JODY BABINEAUX                                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 2:24-CV-3-KS-MTP

SOUTHEASTERN BAPTIST                                              DEFENDANTS
COLLEGE, ET AL.


### ORDER

This matter is before the Court on the Motions for Summary Judgment filed by Defendants Southeastern Baptist College ("SBC") and Richard E. Lopez ("Lopez"), *see* [44], [46], in this action brought pursuant to Mississippi common law and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). *See* 38 U.S.C. §§ 4301-4335; Am. Compl. [10] at 1. In sum, Plaintiff Jody Babineaux ("Babineaux") alleges that Defendants discriminated and retaliated against him prior to his military deployment in May 2021 and subsequently refused to reemploy him after he returned in August 2022, all in violation of the USERRA. After considering the motions and relevant filings, the Court finds that genuine issues of material fact exist as to Plaintiff's claims, with the exceptions of Cause of Action No. 3, brought pursuant to 38 U.S.C. § 4316, and Plaintiff's claim for punitive damages. *See* Fed. R. Civ. P. 56. Accordingly, the Motions for Summary Judgment are hereby granted in part and denied in part.

I.      THE PARTIES

Plaintiff Jody Babineaux was employed as the head baseball coach at Defendant SBC, located in Laurel, Mississippi, from September 2020 to August 2021. Am. Compl. [10] at ¶¶ 22, 23. Defendant Lopez was employed by SBC as its Athletic Director from May 2021 to May 2022. *Id.* at ¶¶ 40, 158.

Plaintiff is a former active-duty Marine and is currently an officer in the Army Reserves. *Id.* at ¶¶ 4-5. In addition, Babineaux is a member of the Mississippi National Guard and is a public-

school teacher.  *Id.* at ¶¶ 6, 17.  The events surrounding Babineaux's military deployment with the Army Reserves in May 2021, his application for reinstatement for employment with SBC in April 2022, and SBC's decision not to reemploy him in August 2022 form the basis of this lawsuit.

II.    FACTUAL BACKGROUND

On September 20, 2020, Plaintiff entered a 12-month full-time employment contract with SBC to serve as its first head baseball coach.  *Id.* at ¶¶ 23-24; [46-2] at 6.  Plaintiff's contracted salary for the 2020-2021 season was $22,500.00.  Am. Compl. [10] at ¶ 25.  Plaintiff alleges that during the 2020-2021 baseball season, he invested $2,000.00 of his salary back into the program, which Defendant SBC promised to reimburse him during the 2021-2022 season, thereby increasing his salary from $22,500.00 to $24,500.00.  *Id.* at ¶¶ 27, 29-30.

On December 8, 2020, the Army Reserves ordered Plaintiff to appear on May 24, 2021, for a 400-day active-duty deployment.  *Id.* at ¶¶ 34-35.  Plaintiff alleges that he promptly informed SBC of his military orders and that he intended to return to work following his military deployment.  *Id.* at ¶¶ 36-37.  Plaintiff further alleges that on May 12, 2021, he met with SBC's president, who also had been in the military.  *Id.* at ¶ 39; Babineaux Dep. [46-1] at 59:17.  According to the Amended Complaint, the president acknowledged Plaintiff's upcoming deployment, gave Plaintiff assurances that he could continue limited duties for the college, and assured him that he would be returned to full-time work after his release from active duty.  Am. Compl. [10] at ¶ 41.  Plaintiff alleges that the president assured him that SBC intended to continue paying him his regular salary while he was deployed.  *Id.* at ¶ 42.

Babineaux alleges that he worked for SBC until he reported for active duty on May 24, 2021.  *Id.* at ¶¶ 45-48.  He alleges that, thereafter, he continued other coaching duties, including recruitment of players, development of upcoming seasons' schedules, and negotiation of game contracts with other colleges.  *Id.* at ¶ 52.  He also alleges that defendants benefited from his

coaching reputation by holding him out as the head coach for recruiting purposes. *Id.* at ¶ 54.

Plaintiff alleges that after Defendant Lopez was initially hired as Athletic Director in mid-May 2021, Lopez verbally informed Babineaux that he intended to pay him $24,500.00 for the 2022-2023 season. *Id.* at ¶ 59. Lopez also allegedly told Plaintiff that two assistant coaches would be paid $3,000.00 and $2,500.00 extra for performing additional work while Babineaux was deployed. *Id.* at ¶ 60. However, Plaintiff asserts that on June 21, 2021, Defendant Lopez sent Plaintiff a text message "demanding" that Plaintiff agree to reduce his 2021-2022 salary to $18,000.00 because of his military service, because the assistant coaches were working more, and related that the salary reduction was "non-negotiable." *Id.* at ¶¶ 61-63. Lopez also allegedly stated that if Plaintiff failed to agree to the salary reduction, Lopez would terminate his employment and revoke future employment. *Id.* at ¶ 64. Plaintiff agreed to the salary reduction, provided that when he returned for the 2022-2023 season, his salary would be reinstated at rate of $24,500.00. *Id.* at ¶ 67. On June 21, Defendant Lopez followed up the text message with an email, which stated: "Per my text message, your 2021-2022 contract will be in the sum of $18,000.00. Your contract is being adjusted in order to pay two assistant baseball coaches $6,000.00 each. Since they will be asked to work more hours they will be paid accordingly." *Id.* at ¶ 69.

On June 21, 2021, Plaintiff sought USERRA guidance about this reduction in salary by filing a complaint with the United States Department of Labor because the reduction appeared to be related to his military service. *Id.* at ¶ 73. Plaintiff testified at his deposition that the Department of Labor clarified that SBC did not have any obligation to pay him during his deployment, but SBC was "legally" required to give his job back to him when he returned from deployment. Babineaux Dep. [46-1] at 60:2-7.[1] Plaintiff alleges that when SBC became aware of the complaint,

---

[1] Note: throughout this Order, when the Court refers to depositions, the page number indicates the page within the deposition itself, not the page number assigned to the document by the Court's CM/ECF system.

it retaliated against him for exercising his USERRA rights by failing to pay him the agreed $18,000.00 sum for the 2021-2022 season. Am. Comp. [10] at ¶¶ 75-78. However, Plaintiff admits that SBC paid him his salary through the end of August 2021, after he had deployed in May. Babineaux Dep. [46-1] at 58:9-15. Plaintiff also admits that in June 2021 he informed SBC that he could no longer feasibly perform work for the college while deployed. *Id.* at 61:7-15.

Babineaux alleges that other retaliatory conduct followed that summer. He alleges that in July 2021, a college official informed students that they could not rent housing from Plaintiff and his wife and, instead, the official steered students to other housing. Am. Compl. [10] at ¶¶ 80-83.[2] Plaintiff alleges that Defendant SBC deleted his SBC email account and erased communications confirming the payment agreement for the 2021-2022 season, all in retaliation for his exercise of his USERRA rights. *Id.* at ¶¶ 84-86.

Babineaux asserts that in the spring of 2022, Athletic Director Lopez took other retaliatory and harassing actions against him for exercising his USERRA rights prior to his release from active duty. Babineaux was released from federal active-duty orders and was assigned to active-duty training with his local Reserve unit on March 3, 2022. *Id.* at ¶¶ 88-89. On April 12, 2022, while he was still on military orders, Babineaux attended a baseball game at SBC. *Id.* at ¶¶ 89-90. While at the game, Defendant Lopez allegedly verbally confronted Babineaux in front of players and their parents about Plaintiff's USERRA complaint and the resulting investigation. *Id.* at ¶¶ 91-93. Defendant Lopez allegedly followed Babineaux all the way to his car, verbally threatening and harassing him the entire way. *Id.* at ¶ 94. Babineaux alleges that Defendant Lopez "repeatedly informed [Plaintiff] that he no longer worked for SBC, and that he would do everything he could to ensure that SBC did not reemploy" Plaintiff as the school had promised him. *Id.* at ¶ 95.

---

[2] At his deposition, Babineaux testified that he was not aware that such rental was contrary to applicable rules governing student athletes issued by the National Christian College Athletic Association, of which SBC was a member.

Plaintiff alleges that Defendant Lopez also asserted that if SBC did employ him, Lopez would change his contract terms so that it would be more difficult for Babineaux to work for SBC and serve in the military simultaneously.  *Id.* at ¶ 96.  Defendant Lopez specifically denies these allegations.  *See* Answer [14] at ¶¶ 88-96.

Plaintiff alleges SBC and Lopez further retaliated against him for exercising his USERRA rights when they refused to reactivate his original college email account because it made it more difficult for him to work for SBC while in the military.  On April 19, 2022, Defendant Lopez texted Plaintiff's wife, asking her for Plaintiff's email address because he needed to send him notices directed to SBC coaches.  *Id.* at ¶ 99.  On April 20, 2022, Plaintiff's wife informed Lopez that the college had deactivated Plaintiff's college email account.  *Id.* at ¶ 101.  That same day, an SBC information technology ("IT") employee provided Plaintiff with a new email address.  *Id.* at ¶ 102. When Plaintiff contacted the IT employee and requested that his original email account be reinstated because it contained contacts for coaches, recruits, and contracts, the employee denied his request.  *Id.* at ¶¶ 103-104.

Even so, Plaintiff continued to follow other directives by Lopez.  On April 20, 2022, while Babineaux was still on active duty, Defendant Lopez directed Plaintiff to officially apply for reemployment.[3]  *Id.* at ¶ 107; [46-10] at 1 (email).  On April 22, 2022, Plaintiff complied with the request by emailing Lopez a formal request for reemployment for the head baseball coach position, which included a resume and military documentation.  Am. Compl. [10] at ¶ 108; [46-10] at 1.  In the email, Babineaux informed Athletic Director Lopez that he would return to work on August 13, 2022, and that during May through July, he would take care of "business concerning military, personal, and family affairs in preparation[] of returning to work."  [46-10] at 1.  On April 22,

---

[3] The applicable regulation requires that the application for reemployment be submitted no later than 90 days after completing service.  20 C.F.R. § 1002.115(c).

Lopez acknowledged receipt of application and replied, "In your absence, since you are not employed with Southeastern Baptist College. [sic] You will not act as a functionary for the men's baseball team at Southeastern Baptist College.  If you need clarification on this matter, please email R.E. Lopez, the Director of Athletics at Southeastern Baptist College." *Id.*[4]

Plaintiff alleges that other retaliatory acts by Lopez soon followed.  On April 28, 2022, Plaintiff and his wife attended SBC's final home baseball game.  Am. Compl. [10] at ¶ 117.  A gate attendant welcomed him back and would not allow him to pay an entrance fee.  *Id.* at ¶ 119.  Nevertheless, Plaintiff placed $5.00 in the gate's donation jar.  *Id.* at ¶ 120.  Plaintiff alleges that Athletic Director Lopez later confronted him at the game, demanded to know why Babineaux and his wife had attended the game, how they had gained admission, and whether they had paid admission, especially since Babineaux was not employed by the school.  *Id.* at ¶¶ 121-125.  When Babineaux explained how he entered the game, Lopez chastised the gate agent, stated very loudly that Babineaux was no longer employed by SBC, and told the agent that Plaintiff should not be admitted to games without payment. *Id.* at ¶¶ 126-130.  Although Babineaux proceeded to pay the $20 admission fee, Lopez instructed a police officer to remove Babineaux and his wife from the game.  *Id.* at ¶¶ 130-131.  The Babineauxs left on their own volition to diffuse the situation.  [50-2] at 4.  This incident prompted Babineaux to file a police report with the Laurel Police Department on April 29, 2022, concerning Lopez's threatening and harassing behavior at the game.  Am. Compl. [10] at ¶ 137.

In the wake of the confrontation at the baseball game, Lopez sent an email to Babineaux on May 2, 2022, in which Lopez set out limitations for Babineaux with regard to the baseball program.  *Id.* at ¶ 138.  Instead of claiming that Babineaux was "no longer employed by SBC," as he allegedly had done at the baseball game a few days earlier, Lopez instead described that

---

[4] Defendant Lopez admits this allegation.  Answer [14] at ¶ 111.

Babineaux was on a "leave of absence" from the baseball program. *Id.* During that period he was not allowed to act as a "functionary" for the men's baseball team, which included "recruiting, purchasing of equipment, scheduling, hiring of coaches, attending tryout sessions, and any other duties that would be considered the responsibility of a baseball coach at Southeastern Baptist College." *Id.*[5] This email prompted Babineaux's wife to email a formal letter of complaint to SBC's president on May 3, 2022, regarding Lopez's behavior at the baseball game. *Id.* at ¶ 144. On May 4, 2022, Babineaux followed up with two formal complaint letters regarding Lopez's behavior to the SBC president. *Id.* at ¶ 145.

On May 14, 2022, Babineaux's active-duty orders ended. *Id.* at ¶ 147. Plaintiff alleges that by statute, he was allowed 90 days to return to work. *Id.* at ¶ 151. Babineaux also alleges that he sought the 90-day delay for his return to organize personal affairs, seek therapy, grieve his mother's death, and participate in annual military training from July 11 to July 24, 2022. *Id.* at ¶¶ 153, 155, 169, 184.

Babineaux met with college officials about Lopez's behavior on May 16 and 19, 2022. *Id.* at ¶¶ 156-157, 161. On May 17, 2022, Lopez resigned from the position of Athletic Director at SBC.[6] *Id.* at ¶ 158. During Babineaux's May 19 meeting with SBC's president, the president stated that he wanted Babineaux to return as head baseball coach for the 2022-2023 season. *Id.* at ¶ 167. Babineaux alleges that he accepted reemployment and informed the president that he would return on August 15, 2022. *Id.* at ¶ 168. Babineaux alleges that during the meeting with the president, the president acknowledged that Babineaux should have been paid $18,000.00 for the 2021-2022 season, but he had no knowledge that Lopez had failed to pay him. *Id.* at ¶ 171. SBC specifically denies this allegation. *See* Answer [13] at ¶ 172.

---

[5] Defendant Lopez admits that "Plaintiff was serving as a[n] SBC baseball coach during Spring of 2022." Answer [14] at ¶ 138.
[6] Lopez, however, asserts that he resigned as Athletic Director on May 5, 2022. Lopez Aff. [46-3] at 2.

Thereafter, SBC hired a new athletic director, Robert Walters.  On June 23, 2022, Walters sent Babineaux a text message requesting a meeting to discuss Babineaux's new contract for the 2022-2023 season.  *Id.* at ¶ 172.  A meeting followed, and Babineaux alleges that during the meeting, Walters suggested that Babineaux's pay should be lowered because he served in the military and assistant coaches performed additional duties in his absence.  *Id.* at ¶ 173; Babineaux Dep. [46-1] at 71-73.  Defendant SBC characterizes this discussion of pay as "negotiations." Answer [13] at ¶ 174.  Plaintiff followed up the meeting with a June 28, 2022, email memorializing his understanding of the meeting, which included a lowered salary, with diminished seniority and responsibilities. Am. Compl. [10] at ¶ 175. On June 29, 2022, Athletic Director Walters responded with an email that stated, "No that's not what we agreed on and I do not discuss contracts by email." *Id.* at ¶ 176.  Thereafter, on July 5, 2022, Babineaux sent an email apologizing for any misunderstanding, noting that he would be in and out of town throughout July and August, and stating his desire to reach an agreement before "my return to duty." *Id.* at ¶ 177.  That same day, Walters responded via email that Babineaux should "[f]eel free to come by anytime." *Id.* at ¶ 178. Plaintiff admits that he did not visit with Walters in person in response to the email, but he asserts that Defendants are attempting to fault him for not returning to SBC prior to the expiration of his USERRA return-to-work date.  Plaintiff's Resp. [50] at 3.

Babineaux continued to experience conflicts between his military and coaching duties.  On July 6, 2022, Athletic Director Walters sent a text message to all coaches setting a meeting for July 12, 2022.  *Id.* at ¶ 179.  On July 7, 2022, Plaintiff emailed Walters that he would be unable to attend the July 12 meeting because he would be on his annual military training from July 11 to 24. *Id.* at ¶ 181.  Plaintiff noted that his "official scheduled return to workday" was August 13 or 15, whichever date the school preferred, and he invited Walters to contact him, should he have questions.  *Id.* at ¶ 181.  On July 8, 2022, Athletic Director Walters emailed Babineaux and noted

that another coach would be available during Plaintiff's military and family time, and that Walters would submit changes to the other coach. *Id.* at ¶ 182. In addition, Walters inquired about new recruits and asked Babineaux to have them contact the school for registration and other activities. *Id.*

On August 15, 2022, Babineaux emailed Athletic Director Walters that he was returning to work that day and desired to set up a meeting. *Id.* at ¶ 185. They agreed that Babineaux should meet Walters at the college later in the day at 4:00 p.m. to sign the 2022-2023 contract. *Id.* at ¶ 186. At the meeting, Walters presented Babineaux with the new contract for the 2022-2023 season. While his prior full-time contract for the 2020-2021 season was two pages, the new contract for 2022-2023 was eleven pages and contained new provisions, including that it was considered "part-time." *Id.* at ¶¶ 190-194. While the proposed renumeration of $22,500.00 was the same as the 2021-2022 contract, it also contained no mention of reimbursement of Babineaux for $2,000.00 in expenses that the had provided for the program during the 2020-2021 school year, for which Plaintiff alleges SBC promised reimbursement. *Id.* at ¶ 193. Because of the extensive changes, Babineaux requested additional time to review the contract and have someone "legally look over" it. *Id.* at ¶195; Babineaux Dep. [46-1] at 74. The parties now agree that the terms of the contract were the same as the contracts offered to all other coaches at SBC for the 2022-2023 year. SBC Mem. [47] at ¶¶ 22, 24; Plaintiff's Resp. [50] at 3. However, at the time, Plaintiff was not aware of the terms of the other coaches' contracts. Babineaux Dep. [46-1] at 76-77.

In the days that followed, Plaintiff's employment was in limbo. On August 16, he attended a coaches' meeting, but he was asked to leave because he had not signed the employment contract. Babineaux Dep. *Id.* at 74-75. Athletic Director Walters did not invite him to a college-wide event involving its sports teams. *Id.* at 76. When a disciplinary issue arose involving several baseball players, Plaintiff referred the matter to the Athletic Director, rather than addressing it himself,

because he was not yet under contract. *Id.* at 75-76.

On August 19, 2022, Plaintiff emailed Athletic Director Walters, asking for more time to review the contract and convene a meeting to discuss it. Am. Compl. [10] at ¶ 196. Plaintiff followed up with an August 23 email to the SBC president, in which he requested a meeting to discuss the contract. *Id.* at ¶ 197. That same day, the college president sent Plaintiff an email setting a meeting with him and Athletic Director Walters for August 25, 2022, which Plaintiff acknowledged. *Id.* at ¶¶ 198-199; [50-3] at 3. After opening the August 25 meeting with prayer, the SBC president provided Plaintiff with a letter terminating his employment, which he then read to Plaintiff. Babineaux Dep. [46-1] at 80:23-24. The August 25 letter provided, in relevant part:

> Please be advised that, due to your failure to accept the offer of employment by your stated deadline of August 15, 2022, the offer of employment has now expired and will not be re-offered.

> As a result of the expiration of this offer of employment, you are no longer employed with Southeastern Baptist College. In addition, you represented that you would return to work no later than August 15, 2022, but you have failed to do so.

> Please be advised that, in addition to allowing the offer of employment to expire without your accepting it, the failure to report to work by August 15, 2022 also constitutes abandonment of your employment. . . . .

> The College wishes you and your family the best in your future endeavors.

[46-6] at 1.

III.    PLAINTIFF'S CLAIMS

Plaintiff filed his initial Complaint [1] on January 10, 2024, followed by an Amended Complaint [10], with leave of Court, on May 30, 2024. Plaintiff brings his claims against both defendants under USERRA, 38 U.S.C. §§ 4301-4335, as well as Mississippi common law. In Plaintiff's first cause of action, he alleges discrimination and retaliation under USERRA 38 U.S.C. §4311(a).[7] Am. Compl. [10] at ¶¶ 244-245. Plaintiff's second cause of action alleges that

---

[7] Although Plaintiff does not specifically invoke § 4311(b), he has alleged that Defendants "retaliated against" and

Defendants failed to promptly reemploy him pursuant to 38 U.S.C. §§ 4312 and 4313.[8]  *Id.* at ¶¶ 246-252.  Plaintiff brings his third claim under 38 U.S.C. § 4316, which governs discharge after reemployment.  *Id.* at ¶¶ 253-257. Finally, Plaintiff alleges Defendants' alleged actions were willful violations of 38 U.S.C. § 4323, entitling him to liquidated damages.  *Id.* at ¶¶ 258-259.  He asks for both economic and non-economic damages, including general and punitive damages, reasonable attorney and expert fees, and costs, as well as other equitable remedies.  *Id.* at ¶¶ 260-264.  The defendants have filed individual answers denying Plaintiff's allegations and asserting affirmative defenses.  *See* Answers [13], [14].  The parties have pursued discovery, and now Defendants have filed their respective motions for summary judgment.  *See* [44], [46].

IV.    SUMMARY JUDGMENT STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs.*, *L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).  The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

At this juncture, the Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom

---

"harass[ed]" him for "filing a USERRA complaint and otherwise exercising USERRA rights," which is prohibited by § 4311(b).  Am. Compl. [10] at ¶ 245(b); *see also id.* at ¶ 245 (c) – (l) (detailing alleged acts of retaliation and harassment).

[8] Plaintiff has abandoned the part of his claim alleging that Defendants failed to accommodate his service-connected disability.  *See* Babineaux Dep. [46-1] at 30-33.

in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138.  If the moving party meets its initial burden, the nonmoving party who will have the burden of proof at trial must go beyond the pleadings and come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  The nonmovant's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Stout v. Vincent*, 717 Fed. App'x 468, 470–71 (5th Cir. 2018) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)).  In addition, "speculation, improbable inferences, . . . and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

V.    DISCUSSION

A.  Claim No. Three – 38 U.S.C. § 4316 – Rights after Reemployment

The Court first addresses Plaintiff's third Cause of Action brought under § 4316, which governs an employer's obligations to an employee after reemployment.  In particular, § 4316(c)(1) provides that "a person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause – within one year after the date of such employment, if the person's period of service before the reemployment was more than 180 days." 38 U.S.C. § 4316(c)(1).  Defendants argue that this section only applies when a person is reemployed after military service or deployment, but thereafter is denied certain employment benefits.  The Court agrees.  By the clear language of the statute, a plaintiff must be "reemployed by an employer" to take advantage of the protections of the statute.  In this case, Plaintiff was never actually reemployed because no contract of employment was signed by him.  Accordingly, Defendants motions for summary judgment as to Cause of Action No. 3, brought under 38 U.S.C.

§ 4316(c)(1), are hereby granted in part.

B. Plaintiff's Claim for Punitive Damages

Defendants have moved for summary judgment as to Plaintiff's claim for punitive damages. Courts have held that the "remedial scheme [of USERRA] conspicuously omits any recovery for mental anguish, pain and suffering, and punitive damages." *Dees v. Hyundai Motor Mfg. Ala., LLC*, 605 F. Supp. 2d 1220, 1229 (M.D. Ala. 2009)(citing *Vander Wal v. Sykes Enterprises, Inc.*, 377 F. Supp. 2d 738, 746 (D.N.D. 2005)). Accordingly, the Court hereby grants Defendants' motions for summary judgment as to Plaintiff's punitive damages claim.

C. Plaintiff's Other Claims

Turning to Plaintiff's remaining claims, Defendants argue that this case is simple. They contend that SBC offered Plaintiff the same contractual amount for 2022-2023 as SBC had paid him in 2020-2021. They insist that SBC offered him the same position as he had previously occupied and, furthermore, it offered him the same contract it had offered to other coaches. SBC maintains that because Plaintiff did not immediately sign the contract it presented to him, a contract that SBC admits was nine pages longer, with additional provisions that had not been included in his prior contract, he "abandoned" his employment. Moreover, Defendant Lopez argues that he played no role in the ultimate decision and should be dismissed from the litigation. Aff. [46-3] at 2. He avers that after he left SBC, he had no further communication with SBC or Plaintiff about Plaintiff's employment status. *Id.* He also points out that he was no longer employed by SBC by the time SBC made the final employment decision. *Id.*

Upon closer inspection of the facts, however, the situation is much more nuanced. While the contractual amount offered to Babineaux for 2022-2023 was the same as 2020-2021, the road leading to the ultimate offer and withdrawal of the employment contract was filled with bumps, twists, and turns. And these bumps, twists, and turns in the road create genuine issues of material

fact precluding summary judgment as to both SBC and Lopez.

Likewise, for the reasons that follow, the determination of the merits of the case is best made by a jury, "which will be able to assess the witnesses' demeanor – a critical component of any credibility determination – and will have the benefit of an adversarial, evidentiary presentation in which the witnesses will be subject to cross-examination, that indispensable adjunct to the ascertainment of truth." *Goswami v. DePaul Univ.*, No. 12 C 7167, 2015 WL 251304, at *1 (N.D. Ill. Jan. 20, 2015)(citations omitted).

1. <u>Claim No. One – 38 U.S.C. § 4311 – Discrimination</u>

Plaintiff alleges that Defendants discriminated and retaliated against him in violation of 38 U.S.C. § 4311. Section 4311 "concerns discrimination against those in the military when making employment decisions." *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 545 (5th Cir. 2013). "The burden for a plaintiff in a Section 4311 claim is to prove that military status was <u>a motivating factor</u> in the employer's actions." *Id.* at 551 (citing 38 U.S.C. § 4311(c)(1))(emphasis added). Military status is a "motivating factor" if "one reason for the employer's actions was [the plaintiff's] membership, application for membership, service, application for service, or obligation for service in the uniformed services." *Id.* An adverse employment action "can appear throughout the employment continuum, from consideration for hiring to employee termination." *Id.* at 547. However, the employer "is not liable under USERRA if it can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." *Id.* at 545.

The disputed material facts demonstrate that Babineaux's military status could have been a "motivating factor" in SBC and Lopez's employment actions toward Plaintiff. Athletic Directors Lopez and Walters made multiple requests to Babineaux for him to take lower compensation due to his military service so that SBC could pay other coaches more money. SBC admits to the request

by Walters, but characterizes this approach as an "attempt[] to negotiate."  Answer [13] at ¶ 174.

Defendant Lopez had at least two public confrontations with Babineaux at college baseball games

in April 2022, arguably based on animus stemming from Babineaux's absence from work due to

military service.  These clashes occurred after Babineaux had returned to Laurel, but before he had

been released from military orders.  Moreover, while SBC faults Babineaux for his failure to "come

by anytime" to discuss his contract, as stated in Athletic Director Walters's July 5 email, it fails to

recognize that he still had military and other obligations during the 90-day period after his military

discharge.

And although SBC has a defense provided by 20 C.F.R. § 1002.117, it fails to present any

evidence that they provided Plaintiff with a firm deadline by which to sign the employment

contract, or that his alleged "abandonment" was inconsistent with "the conduct rules, established

policy, and general practices of the employer pertaining to an absence from scheduled work."  20

C.F.R. § 1002.117(a).  Furthermore, they arguably prevented him from working between August

15 and 25, the time when he had not signed the contract, by dismissing him from a coaches'

meeting and not inviting him to a school function.  SBC also appears to fault Babineaux for not

handling player discipline between August 15 and 25, despite its insistence that he was not under

contract during that time.

Plaintiff also asserts that the adverse employment action, coming just 10 days after he was

initially presented with the employment contract on August 15, creates "temporal proximity" to

establish "causation in a prima facie case of retaliation."  *See Besser v. Texas General Land Office*,

834 F. App'x 876, 884 (5th Cir. 2020)(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-

274 (2001)). Indeed, after he was presented with the contract on August 15, he asked for more

time so that someone could "legally look over" it.  Ten days later, without warning, and after

Babineaux had requested additional time for review, SBC summarily withdrew the offer of

employment.  While temporal proximity alone is not sufficient proof of causation, the adverse employment action in this case presents circumstantial evidence that Plaintiff's exercise of USERRA rights was a motivating factor in his termination.  *See Stanton v. Jarvis Christian College*, 477 F. Supp. 3d 561, 571 (E.D. Tex. 2020)(finding that a 21-day gap between requesting FMLA leave and a termination could be viewed as "circumstantial evidence that [Plaintiff's] leave request was a motivating factor in the termination decision.").  The termination was the culmination of months of events which, viewed in hindsight, establish a genuine issue of material fact as to whether Defendants retaliated against Babineaux for exercising his rights under the USERRA.

And although Lopez argues that he had no influence on the ultimate decision to terminate Babineaux because he had left SBC by that time, there is a question of material fact as to whether SBC's ultimate decision was influenced by Lopez's prior actions, which could be characterized as being rooted in anti-military "animus."  *See Staub v. Proctor Hospital*, 562 U.S. 411, 411 (2011) (exploring "cat's paw liability"[9] within the context of USERRA).  In *Staub*, the Supreme Court considered "the circumstances under which an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision."  *Id.* at 413.  The Supreme Court concluded that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA."  *Id.* at 422 (emphasis in original)(citations omitted).

---

[9] The term "cat's paw" can be traced back to 17th century collections of Aesop's fables and, in the legal context, early 19th century federal case law.  *Goswami*, 2015 WL 251304, at *15 n.21 (recording that it was revived in modern times by *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)(Posner, J.)).  "In the fable, a monkey induces a cat to remove chestnuts from a fire.  After the cat has done so, burning his paws in the process, the monkey makes off with the chestnuts, leaving the cat with nothing."  *Id.*

The defendants have failed to address this case, relying instead on pre-*Staub* case law. Looking at the 2022-2023 contract, it contains provisions Lopez allegedly threatened to impose on Babineaux to make it more difficult for him to coach and be in the military. There is no provision for vacation, sick, or emergency days off. And, notably, section 50 provides for "Adjustment of Contracts." [46-2] at 16. Specifically, the contract provides that SBC's "administration will reserve the right to adjust the length and monetary value of the services due to prolonged absences by the undersigned." *Id.* Because there is a genuine issue of material fact as to whether Lopez was "motivated by antimilitary animus" when he included these additional terms in the contract, thereby causing "an adverse employment action," this question should be left to the jury.

Finally, Defendants make the argument that Plaintiff lacks standing to assert a claim for harassment against Defendant Lopez because he has produced no evidence that he has suffered any loss of wages or other benefits due to Lopez's alleged harassment. Indeed, the Court cannot order injunctive relief because Lopez and Plaintiff are no longer employed with SBC. *Dees*, 605 F. Supp. 2d at 1229. ("And because [plaintiff] is no longer working for [defendant], an injunction requiring [defendant] 'to comply with the provisions of [USERRA],' 38 U.S.C. § 4312(d)(1)(A), would be of not benefit to him."). However, because genuine issues of material fact exist as to whether Lopez was "motivated by antimilitary animus" such that he intended to "cause an adverse employment action," the liquidated damages provisions of § 4323 are still in play. Should this matter proceed to trial, Plaintiff will have the opportunity to present evidence related to loss of wages.

For these reasons, the Court finds that there are genuine disputes of material facts as to whether Plaintiff's "military status was a motivating factor in the employer's actions." *Bradberry*, 732 F.3d at 551. Accordingly, Defendants' motions for summary judgment as to Plaintiff's claim based on 38 U.S.C. § 4311 are hereby denied.

2.  Claim No. Two – Reemployment – 38 U.S.C. §§ 4312, 4313

In Plaintiff's second claim, he alleges that Defendants failed to promptly reemploy him pursuant to 38 U.S.C. §§ 4312 and 4313. Section 4312 generally "provides Reservists the right to reemployment when their absence from a position of employment is necessitated by reason of service in the uniformed services." *Bradberry*, 732 F.3d at 545 (quoting 38 U.S.C. § 4312(a)). An employee "entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment." 38 U.S.C. § 4313. "[I]n the case of a person whose period of service in the uniformed services was for more than 90 days," the employee must be promptly reemployed:

(A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform; or

(B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

38 U.S.C. § 4313(a)(2). An "employee is not required to prove that the employer discriminated against him or her because of the employee's uniformed service in order to be eligible for reemployment." *Bradberry*, 732 F.3d at 547 (quoting 20 C.F.R. § 1002.33).

The Supreme Court has compared USERRA's reemployment provision to an escalator: "[A] returning service member 'does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.'" *Rogers v. San Antonio*, 392 F.3d 758, 763 (5th Cir. 2004) (quoting *Fishgold v. Sullivan Drydock & Repair Co.*, 328 U.S. 275, 284-85, 66 S. Ct. 1105, 90 L. Ed. 1230 (1946)). This "escalator principle applies to the employment position, and rate of pay, as well as the seniority rights to which the returning service member is entitled." *Id.*

18

> Thus, USERRA requires that the service member be reemployed in the escalator job position comparable to the position he would have held had he remained continuously in his civilian employment.... If the service was longer than 90 days, the service member is entitled to reemployment in the escalator position, but the employer may also reinstate the member in any position of like seniority, status, and pay for which he is qualified. If the service member is unable to qualify for either the escalator position or a comparable position, despite reasonable employer efforts, he is entitled to reemployment in a position that is the nearest approximation to the escalator position.

*Id.* (citations and punctuation omitted); *see also Bailey v. Forrest Cnty., Mississippi*, No. 2:20-CV-16-KS-MTP, 2021 WL 518330, at *3–4 (S.D. Miss. Feb. 11, 2021).

Defendants argue that Plaintiff was promptly offered reemployment in a position of like seniority, status, and pay. *See* 38 U.S.C. § 4316(a). Likewise, SBC does not dispute that Plaintiff was entitled to reemployment under §§ 4312 and 4313 in that Plaintiff properly applied for reemployment under USERRA. Mem. [47] at 13. SBC maintains that it expressly complied with all the provisions of the USERRA.

Plaintiff responds that while the new contract was for the same renumeration, it did not come with other benefits that he received in his 2020-2021 contract. Babineaux asserts that the new contract differs in material aspects from his prior contract. Specifically, he asserts that it differs in terms of seniority, responsibility, and vacation days. On its face, it is labeled "part-time," whereas his former contract was "full-time." Further, it contains expanded provisions governing "for cause" terminations, and it neglected to reimburse him for $2,000.00 in expenses the college allegedly owed him dating back to the 2020-2021 contract. And, as pointed out *supra*, it contains a provision for SBC to adjust compensation "due to prolonged absences," which could directly impact any future military deployments by Plaintiff. Accordingly, there are genuine issues of material fact as to whether the contract presented was for reemployment in a position of "like seniority, status, and pay." 38 U.S.C. § 4313(a)(2)(A).

    3.  <u>Willful Violations – 38 U.S.C. § 4323</u>

Finally, Defendant SBC contends that Plaintiff is not entitled to damages for willful conduct under 38 U.S.C. § 4323(d).  A claimant may recover additional liquidated damages "equal to the amount of lost wages and benefits if the court determines that the employer's failure to comply with [USERRA] was willful[, meaning] the employer either knew or showed reckless disregard for whether its conduct was prohibited by [USERRA]."  20 C.F.R § 1002.312 (2025); 38 U.S.C. § 4323(d)(1)(C).   No party has submitted Fifth Circuit case law on this point. Furthermore, additional research has failed to provide much caselaw, in general, as the liquidated damages provision was not a part of the VRRA, USERRA's predecessor.  *Fink v. City of New York*, 129 F. Supp. 2d 511, 523 (E.D.N.Y. 2001) (noting there was "a dearth of caselaw" in any Circuit regarding the interpretation of § 4323(d)); *see also Sumrall v. Ensco Offshore Co.*, No. 2:17cv48-KS-MTP, 2018 WL 2088761 (S.D. Miss. May 7, 2018)(noting same).  Accordingly, several courts have taken the liquidated damages standard from the Age Discrimination and Employment Act. *Serricchio v. Wachovia*, 658 F.3d 169, 193 (2d Cir. 2011); *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1022 (C.D. Ca. 2013); *Davis v. Crothall Servs. Grp., Inc.*, 961 F. Supp. 2d 716, 735-36 (W.D. Penn. 2013).

With that standard in mind, courts have held "[i]t is not enough to show that the employer knew that the [law] was 'in the picture' or that the employer 'acted without a reasonable basis for believing that it was complying with the statute.'"  *Skalka v. Fernald Envt'l Restoration Mgmt. Corp.*, 178 F.3d 414, 423 (6th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-134 (1988)).  "If an employer acts 'reasonably and in good faith in attempting to determine whether [its] plan would violate' the law at issue, liquidated damages are not appropriate." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396 (6th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129 (1985)).  The burden is on the plaintiff to show willfulness. *Mace v. Willis*, 259 F. Supp. 3d 1007, 1016 (D. S.D. 2017) (citing *Davis*, 961 F. Supp. 2d at 736).

Plaintiff argues that this question is best left for the jury. The Court agrees. The reasonableness and good faith of SBC's action to abruptly withdraw the contract – especially in the light of the parties' shared history concerning Plaintiff's assertions of his USERRA rights – must be determined by a jury.

VI.     <u>CONCLUSION</u>

Accordingly, for the reasons stated above, the Court finds that genuine issues of material fact exist as to Plaintiff's claims, with the exceptions of Cause of Action No. 3, brought pursuant to 38 U.S.C. § 4316, and Plaintiff's claim for punitive damages. *See* Fed. R. Civ. P. 56. The Court is of the opinion that this case would be best resolved upon a full presentation of the facts in the context of a trial setting. Accordingly, the Motions for Summary Judgment are hereby granted in part and denied in part.

SO ORDERED and ADJUDGED, this 16th day of September, 2025.

*/s/ Keith Starrett*
KEITH STARRETT
UNITED STATES DISTRICT JUDGE